**19MAG 2446**

Approved: _____
FRANK J. BALSAMELLO / MATTHEW HELLMAN
Assistant United States Attorneys

Before:     THE HONORABLE GABRIEL W. GORENSTEIN
            Chief United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :    **SEALED COMPLAINT**
                                    :
     - v. -                         :    Violation of 18 U.S.C.
                                    :    §§ 924(c)(1)(A)(i),
BRENT MERCHANT,                     :    (ii), and (iii), and 2
     a/k/a "Jones," and             :
ZAQUAN MCCUTCHEN,                   :    COUNTY OF OFFENSE:
     a/k/a "Zay,"                   :    BRONX
                                    :
               Defendants.          :

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     JOSE LIZARDO, being duly sworn, deposes and says that he is Detective with the New York City Police Department ("NYPD"), and charges as follows:

                    **COUNT ONE**
              (Using, Carrying, Possessing,
          Brandishing, and Discharging Firearms)

     1.   On or about June 20, 2015, in the Southern District of New York, BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, a conspiracy to distribute and possess with intent to distribute cocaine base, in a form commonly known as "crack cocaine," and marijuana, knowingly did use and carry firearms, and in furtherance of such crime, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which were brandished and discharged.

               (Title 18, United States Code,
        Sections 924(c)(1)(A)(i), (ii), and (iii), and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

2. I am a Detective with the NYPD, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the case, my examination of reports and records, and my conversations with other individuals, including law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. From my review of law enforcement reports and records, and my conversations with other members of law enforcement, I have learned, among other things, that on or about the night of June 20, 2015, police responded to a shooting (the "Shooting"), in the vicinity of East Burnside Avenue and Anthony Avenue in the Bronx, New York (the "Intersection"). Upon arriving, police and paramedics found and treated a fifteen-year-old boy who had been shot approximately two times and was lying on the sidewalk in front of the apartment building at 261 East Burnside Avenue ("261 East Burnside"), in close proximity to the apartment building at 269 East Burnside Avenue ("269 East Burnside"). Law enforcement also located, and member of the NYPD's Evidence Collection Team recovered, several .380-caliber shell casings from the area in front of a store at 255 East Burnside Avenue ("255 East Burnside"), a fired bullet in front of 261 East Burnside, and several .9-millimeter shell casings in the vicinity of the southeast corner of the Intersection.

4. I have reviewed security camera footage from 269 East Burnside (the "269 Videos") and observed the following, among other things:

a. On the night of June 20, 2015, immediately prior to the Shooting, four males — including two who appear to be BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants — gather near the front door to 269 East Burnside. Still images from the 269 Videos are provided below, accompanied by NYPD file photos of MERCHANT and MCCUTCHEON.






    b. MERCHANT is seen holding what appears to be a firearm.  A still image from the 269 Videos is provided below.



  5. I have reviewed security camera footage from 261 East Burnside (the "261 Video") and observed the following, among other things:

    a. Immediately prior to the Shooting, the four males described in the preceding paragraph — including BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants — emerged from 269 East Burnside and ran on the sidewalk towards the Intersection.[1]

---

[1] Time stamps on the 269 Videos and 261 Video are not consistent with one another; however, based on the events captured on the videos, as displayed herein, the sequence of events is clear.

    b. MERCHANT pointed what appears to be a handgun in the direction of the Intersection, then he ran outside the view of the 261 Video in the direction of 255 East Burnside. Seconds later, he ran back into 269 East Burnside.  Still images from the 261 Video are provided below.





c.      MCCUTCHEON ran to the front of 261 East Burnside, pointing what appears to be a firearm in the direction of the Intersection, then ran back into 269 East Burnside. Still images from the 261 Video are provided below.





d.      One of the other individuals ("CC-1") stopped in front of 261 East Burnside, then ran back into 269 East Burnside.

            e.   The fourth individual ("CC-2") ran outside the view of the 261 Video, then crawled on his stomach back towards 269 East Burnside, leaving what appears to be a trail of blood behind him.

      6.   I have reviewed additional footage from the 269 Videos and observed the following, among other things:

            a.   Immediately after the Shooting, MCCUTCHEON ran back into 269 East Burnside, and what appears to be a firearm is visible in his left hand and in the reflection of his left hand seen in the glass door.  Still images from the 269 Videos are provided below.





    b. Other 269 Videos from inside the lobby show MERCHANT and MCCUTCHEON reentering 269 East Burnside after the Shooting. Still images from the 269 Videos are provided below.





    c. Additional 269 Videos from the fourth floor of 269 East Burnside show MERCHANT, MCCUTCHEON, and CC-1 exiting a specific apartment (the "Apartment") prior to the Shooting.

    7. From my review of law enforcement reports and records, and my conversations with other members of law

8

enforcement, among other things, I have learned that, after the Shooting, members of the NYPD arrested BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants, and CC-1, among other people, inside the Apartment. I have looked at booking photographs of MERCHANT and MCCUTCHEON from that night and observed that their appearances are consistent with the individuals in the 261 Video and 269 Videos. In addition, MERCHANT appears to be wearing the same sneakers that he wore during the Shooting. Still images from the 269 Videos are provided below, accompanied by NYPD arrest photos of MERCHANT and MCCUTCHEON from the night of the Shooting.



9

8. I have spoken with investigators who have met with two cooperating witnesses ("CW-1" and "CW-2," together, the "CWs"), both of whom were members of a narcotics conspiracy that operated on Anthony Avenue between East Tremont Avenue and the Intersection at the time of the Shooting.[2] From notes of CW-1's and CW-2's interviews, I have learned the following, among other things.

a. CW-1 and CW-2 both looked through a book containing multiple individuals' photographs, including ones of BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants, and stated, in substance and in part, that they knew MERCHANT and MCCUTCHEON by nicknames and that they knew MERCHANT and MCCUTCHEON to be members of a gang called "Money Over Everything," or "MOET," members of which (including MERCHANT and MCCUTCHEON) sold crack cocaine and marijuana in the vicinity of an apartment building known as "2Stacks," located at 2000 Valentine Avenue in the Bronx.

b. Both CW-1 and CW-2 also said, in substance and in part, that in or about 2014 and 2015, MERCHANT, MCCUTCHEON, and other MOET members engaged in a violent rivalry with members of CW-1's and CW-2's drug conspiracy on Anthony Avenue, because dealers at Anthony Avenue had accepted into their membership an individual (the "CWs' CC-1") who had been a member of a separate crack dealing crew at 2Stacks, the interests of which were antagonistic to MOET's crack distribution in the same building. CW-1 also said, in substance and in part, that MERCHANT had warned CW-1 that Anthony Avenue's association with the CWs' CC-1 would cause members of the MOET enterprise to view Anthony Avenue as being aligned with the CWs' CC-1 and his drug associates at 2000 Valentine Avenue.

c. After CW-1, CW-2, and their narcotics-dealing co-conspirators began associating with the CWs' CC-1, they observed members of MOET menace dealers on Anthony Avenue with firearms, and members of the two groups — MOET and Anthony Avenue — engaged in multiple shootouts over the course of several months in and about 2014 and 2015.

---

[2] Both CW-1 and CW-2 are assisting law enforcement in the hopes of receiving leniency at sentencing in their respective cases, and both have provided information that has generally proven to be credible and reliable, and has been corroborated by other witnesses and evidence.

10

WHEREFORE, the deponent respectfully requests that warrants be issued for the arrests of BRENT MERCHANT, a/k/a "Jones," and ZAQUAN MCCUTCHEN, a/k/a "Zay," the defendants, and that MERCHANT and MCCUTCHEN be arrested and imprisoned, or bailed, as the case may be.

_____
DETECTIVE JOSE LIZARDO
New York City Police Department


Sworn to before me this
____ day of March, 2019

_____
THE HONORABLE GABRIEL W. GORENSTEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK